IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

CHARLOTTE R. CAREY,

    Plaintiff,

Case No.

v.

AMERICAN EXPRESS COMPANY,
NCO FINANCIAL SYSTEMS, INC.,
"MS. BUVALA" A/K/A JANE DOE, and
STEVE THOMPKINS,

**JURY TRIAL DEMANDED**

    Defendants.
_____/

**COMPLAINT FOR UNLAWFUL DEBT COLLECTION PRACTICES
AND DEMAND FOR JURY TRIAL**

### I.  Introduction

1. This is an action for damages brought by an individual consumer for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et. seq. (hereafter "FDCPA") and the Florida Consumer Collection Practices Act, F.S.A. §§ 559.55-559.785 (hereafter "FCCPA"). These laws prevent, respectively, debt collectors and persons from, *inter alia*, engaging in abusive, deceptive, and unfair collection practices.

### II.  Jurisdiction and Venue

2. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1337, and 1367.

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(d) as a substantial part of the events or omissions giving rise to the claim occurred in this district.

### III.  Parties

4. Plaintiff Charlotte R. Carey, (hereafter "Plaintiff") is an individual who resides in the City of Punta Gorda, County of Charlotte, State of Florida, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and F.S.A. § 559.55(2) and/or a person with standing to bring a claim under the FDCPA by virtue of being directly affected by a violation of the Act.

5. Defendant American Express Company (hereafter "Amex") is a New York Corporation, with its principal place of business located at 200 VESEY ST., New York, New York 10285.

6. Defendant NCO Financial Systems, Inc. (hereafter "NCO") is a Pennsylvania corporation, with its principal place of business located at 507 Prudential Road, Horsham, Pennsylvania 19044. Defendant's principal business is the collection of debts, using the mails and telephone, and Defendant regularly collects, or attempts to collect, debts alleged to be due to another.

7. Defendant Jane Doe, (hereafter "Jane") is an individual employee and/or agent of Defendant Amex and, based on information and belief, regularly collects, or attempts to collect, debts alleged to be due to another.

8. Defendant Steve Thompkins (hereafter "Thompkins") is an individual employee and/or agent of Defendant NCO and, based on information and belief, regularly collects, or attempts to collect, debts alleged to be due to another.

9. Defendant Ms. Buvala (hereafter "Buvala") is an individual employee and/or agent of Defendant NCO and, based on information and belief, regularly collects, or attempts to collect, debts alleged to be due to another.

### IV. Factual Allegations

10. Plaintiff held two separate credit cards with Defendant Amex, account numbers ending 2007 and 2001.

11. The credit cards were used to make purchases primarily for personal, family, or household purposes, and thus, the obligation to pay is a "debt" or "consumer debt" as those terms are defined by 15 U.S.C. § 1692a(5) and F.S.A. § 559.55(1).

12. On or about September 2, 2008 Defendant Amex lowered Plaintiff's credit limit down to the balance on credit card ending in 2007, leaving no available credit.

13. Suddenly and unexpectedly unable to use the card, Plaintiff was forced to use her available cash to purchase food, gas, etc., and was then unable to make payments on the account.

14. Due to Plaintiff's inability to pay, late and over-limit charges began compiling on credit card ending in 2007.

15. On or about November 11, 2008 Defendant Amex also lowered Plaintiff's credit limit on credit card ending in 2001, resulting in late and over-limit charges similar to card ending 2007.

## Collection calls from Defendant AMEX

16. In or around November 2008, Plaintiff spoke to a representative from Defendant Amex's collections department.

17. The collection representative requested that Plaintiff agree to authorize an electronic payment of $1,679.35 from her checking account which would be posted on November 17, 2008.

18. Plaintiff was unsure if she would have enough money in her account by that time and at first did not authorize the post-dated electronic payment.

19. However, the collection representative told Plaintiff that if she found that she did not have the money available in the account to make the payment she could cancel the payment by calling Amex the day before the scheduled payment date.

20. On November 16, 2008 Plaintiff realized that she did not have sufficient funds to make the payment so she called Amex, spoke with a representative named "Richard," and requested that her authorized electronic payment be cancelled.

21. "Richard" agreed to cancel the payment and promised that no money would be drafted from Plaintiff's bank account on November 17, 2008.

22. Despite "Richard's" promise that no money would be drafted from Plaintiff's account, on November 17, 2008 Defendant Amex initiated an electronic deduction of $1,679.35 from Plaintiff's bank account.

23. This unauthorized payment caused Plaintiff's bank account, ending in 4373, to be overdrawn, causing a $350.00 of overdraft fees to be assessed to Plaintiff's account.

24. On or about December 11, 2008 Plaintiff spoke with a representative of Defendant Amex, Mr. Huff.

25. During this call Mr. Huff advised Plaintiff that, if she could pay $400.00 now and then $400.00 per month starting on January 1, 2009, she would be admitted to American Express's "care program" and that her card would be reinstated after one year.

26. Plaintiff advised Mr. Huff that she was unable to pay $400.00 now but that she could pay $200.00 now to avoid being sent to a collection agency, and also that she could begin paying $400.00 per month on January 1, 2009.

27. Mr. Huff advised Plaintiff that this would be acceptable and, upon Plaintiff's request for the agreement to be memorialized in writing, said that he would send out documents related to the "care program" after her first $400.00 payment.

28. During this call, Plaintiff authorized a payment of $200.00 to Defendant Amex as consideration to be admitted into Defendant Amex's "care program."

29. On or about December 24, 2008 Plaintiff received a phone call from a female caller (hereafter "Doe") in Defendant Amex's collections department.

30. Plaintiff expressed to Defendant Doe that she was puzzled as to why she was receiving this call as she believed that she was to be accepted to Defendant Amex's "care program."

31. Plaintiff attempted to explain the entire situation to Defendant Doe.

32. However, Defendant Doe interrupted Plaintiff and told her to "be quiet" because it was "her turn to talk."

33. Frustrated that Defendant Doe was being rude and aggressive, Plaintiff terminated the phone call by hanging up the telephone.

## Collection calls from Defendant NCO

34. On or about December 31, 2008, while Plaintiff was in Georgia preparing to attend her cousin's funeral, she received a call from Defendant Buvala regarding the debt.

35. During this call Defendant Buvala had an overall tone of unreasonableness and rudeness.

36. Plaintiff explained to Defendant Buvala that Defendant NCO should not be attempting to collect the debt from Plaintiff, as she was in the "care program" with Defendant Amex and that she intended to pay Amex directly.

37. Defendant Buvala explained that Defendant NCO had been hired by American Express to collect the debt and that Plaintiff had to pay the entire $17,000.00 balance immediately, and payments would not be acceptable.

38. Plaintiff explained that she should not have to pay the balance in full, as she had an agreement with Amex to pay $400.00 per month, and in any event, she did not have "that kind of money," to which Defendant Buvala suggested that Plaintiff use another credit card or borrow the amount from a relative.

39. Plaintiff advised Defendant Buvala that she was currently in Georgia preparing to attend a funeral for her cousin and that she was unable to continue the conversation.

40. Defendant Buvala commented that, if the funeral was more important than continuing the phone call, then she would call the credit bureaus and "ruin the credit" of Plaintiff's son and daughter-in-law.

41. Defendant Buvala's threat to ruin her son's credit was very upsetting to Plaintiff and it made her feel physically ill.

42. After terminating the phone call with Defendant Buvala, Plaintiff called Amex and was told by a credit representative that her Son and Daughter-in-law were not liable for the account.

43. On or about January 14, 2009 Defendant Thompkins, as an agent/employee of Defendant NCO, called Plaintiff's daughter-in-law regarding Plaintiff's debt with Defendant Amex.

44. Plaintiff's daughter-in-law was neither a cosigner nor an authorized user on the Amex account.

**Collection letters received from Defendant Amex**

45. On or about January 30, 2009 Defendant Amex sent a letter to Plaintiff offering her an "opportunity" to regain Cardmembership and "potentially" improve her standing with Defendant Amex, if Plaintiff paid the debt associated with account ending 2007 in full to Defendant NCO.

46. The letter stated that, upon her payment-in-full, Plaintiff would receive a credit application to fill out and return, which would then be approved, unless she "ha[s] an existing open American Express Credit or Charge Card Relationship."

47. At the time that this letter was sent to Plaintiff, both of Plaintiff's accounts with Defendant Amex were past-due, which Defendant Amex had knowledge of.

48. It is alleged that the offer contained was a deceptive means of collecting the debt associated with card ending 2007, as Defendant Amex knew that her application would not be accepted, per the terms stated in the letter.

49. As a result of Defendants' actions and omissions and numerous violations of the FDCPA and FCCPA, Plaintiff suffered from feelings of fear, restlessness and sleeplessness, nervousness, and anxiety, amongst other negative emotions.

**First Claim for Relief**
**FCCPA Violation**
**Charlotte R. Carey v. American Express Company**

50. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 33 and 45 through 49.

51. The actions of Defendant were done with the intent to coerce Plaintiff into paying a consumer debt.

52. The foregoing acts and omissions of Defendant Amex and its agents constitute numerous and several violations of the FCCPA, including, but not limited to F.S.A. §§ 552.72(7) and (8).

53. As a result of the above violations of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FCCPA, and recovery from Defendant for actual damages, statutory damages, punitive damages and reasonable attorney's fees and costs.

**Second Claim for Relief**
**FDCPA Violation**
**Charlotte R. Carey v. NCO Financial Systems, Inc.**

54. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 15, 34 through 44 and 49.

55. The actions of Defendant were done with the intent to coerce Plaintiff into paying a consumer debt.

56. The foregoing acts and omissions of Defendant NCO constitute numerous and several violations of the FDCPA, including, but not limited to 15 U.S.C. §§1692d, 1692d(2), 1692(e), 1692e(5), 1692e(7), 1692e(10) and 1692f.

57. As a result of the above violations of the FDCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA, and recovery from Defendant for actual damages, statutory damages, and reasonable attorney's fees and costs.

**Third Claim for Relief**
**FCCPA Violation**
**Charlotte R. Carey v. NCO Financial Systems, Inc.**

58. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 15, 34 through 44 and 49.

59. The actions of Defendant were done with the intent to coerce Plaintiff into paying a consumer debt.

60. The foregoing acts and omissions of Defendant NCO and its agents constitute numerous and several violations of the FCCPA, including, but not limited to F.S.A. §§ 552.72(7) and (8).

61. As a result of the above violations of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FCCPA, and recovery from Defendant for actual damages, statutory damages, punitive damages and reasonable attorney's fees and costs.

### Fourth Claim for Relief
### FDCPA Violation
### Charlotte R. Carey v. Steve Thompkins

62. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 15, 43, 44 and 49.

63. The actions of Defendant were done with the intent to coerce Plaintiff into paying a consumer debt.

64. The foregoing acts and omissions of Defendant Thompkins constitute numerous and several violations of the FDCPA, including, but not limited to 15 U.S.C. §§1692d, 1692d(2), 1692(e), 1692e(5), 1692e(7), 1692e(10) and 1692f.

65. As a result of the above violations of the FDCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA, and a recovery from Defendant for Plaintiff's actual damages, statutory damages, and reasonable attorney's fees and costs.

### Fifth Claim for Relief
### FDCPA Violation
### Charlotte R. Carey v. Ms. Buvala

66. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 16, 34-42 and 49.

67. The actions of Defendant were done with the intent to coerce Plaintiff into paying a consumer debt.

68. The foregoing acts and omissions of Defendant Buvala constitute numerous and several violations of the FDCPA, including, but not limited to 15 U.S.C. §§1692d, 1692d(2), 1692(e), 1692e(5), 1692e(7), 1692e(10) and 1692f.

69. As a result of the above violations of the FDCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FDCPA, and a recovery from Defendant for Plaintiff's actual damages, statutory damages, and reasonable attorney's fees and costs.

### Sixth Claim for Relief
### FCCPA Violation
### Charlotte R. Carey v. Jane Doe

70. Plaintiff repeats, realleges, and incorporates by reference paragraphs 1 through 15, 29 through 33 and 49.

71. The actions of Defendant were done with the intent to coerce Plaintiff into paying a consumer debt.

72. The foregoing acts and omissions of Defendant Doe constitute numerous and several violations of the FCCPA, including, but not limited to F.S.A. §§ 552.72(7) and (8).

73. As a result of the above violations of the FCCPA, Plaintiff is entitled to a declaratory judgment that Defendant's conduct violated the FCCPA, and recovery from Defendant for actual damages, statutory damages, punitive damages and reasonable attorney's fees and costs.

WHEREFORE, PLAINTIFF respectfully prays that judgment be entered against DEFENDANTS for the following:

a. Declaratory Judgment that DEFENDANTS' conduct violated the FDCPA and the FCCPA;

b. Actual damages pursuant to 15 U.S.C. § 1692k and F.S.A § 559.77(2);

c. Statutory damages pursuant to 15 U.S.C. § 1692k and F.S.A. § 559.77(2);

d. Punitive damages pursuant to F.S.A. § 559.77(2);

e. Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k and § 559.77(2); and

f. For such other and further relief as may be just and proper.

Dated: December 30, 2009                    Respectfully submitted,

                                             s/ G. Donald Golden
                                            G. DONALD GOLDEN, ESQUIRE
                                            Florida Bar No. 0137080
                                            don@brandonlawyer.com
                                            JAMES W. ELLIOTT, ESQUIRE
                                            Florida Bar No. 0040961
                                            james@brandonlawyer.com
                                            JOSEPH B. BATTAGLIA, ESQUIRE
                                            Florida Bar No. 0058199
                                            joe@brandonlawyer.com
                                            THE GOLDEN LAW GROUP
                                            213 N Parsons Avenue
                                            Brandon, Florida   33510
                                            Telephone:  (813) 413-8700
                                            Facsimile:   (813) 413-8701
                                            Attorney for Plaintiff

**DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff demands trial by jury in this action.

                                             s/ G. Donald Golden
                                            G. Donald Golden, Esquire
                                            James W. Elliott, Esquire
                                            Joseph B. Battaglia, Esquire